IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL PROVITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-cv-424-JTA |
| | ) | (WO) |
| MARTIN J. O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Samuel Provitt ("Provitt") brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[2] The Commissioner denied Provitt's applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). The Court construes Provitt's brief in support of his Complaint (Doc. No. 10) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 11). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

---

[1] Martin J. O'Malley was appointed Commissioner for the Social Security Administration on December 20, 2023 and under Federal Rule of Civil Procedure 25(d) is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

[2] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Provitt's motion for summary judgment is due to be DENIED, the Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.   PROCEDURAL HISTORY AND FACTS

Provitt is a 50-year-old male[3] with a twelfth-grade education who previously worked as a forklift operator, material handler, welder, bander, and warehouse sorter.[4] (R. 44, 49-51.)[5] He alleged a disability onset of September 20, 2018, due to degenerative disc disease, depression, anxiety, and Helicobacter Pylori ("H. Pylori").[6] (R. 47, 53, 55, 57, 59.)

Provitt filed an application for a period of disability and DIB under Title II of the Social Security Act and filed a Title XVI application for SSI. (R. 10, 294-98.) Both applications were denied, and Provitt requested an administrative hearing. (R. 10.) Following the administrative hearing, the Administrative Law Judge ("ALJ") returned an unfavorable decision on October 21, 2021. (R. 10-31.) Provitt sought review by the

---

[3] Provitt was 50 years old at the time of the administrative hearing. (R. 44.)

[4] Past work descriptions as a forklift operator, material handler, and bander were used in another ALJ decision before this one. (R. 49.)

[5] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 12.)

[6] Provitt alleges that he cannot lay on his stomach due to severe abdominal pain from the H. Pylori infection, however, he testifies that he frequently lays on his stomach and has his son place an ice pack and heating pad on his back to relieve his back pain. (R. 61.)

Appeals Council, and it denied his request. (R. 1-7.) Thus, the hearing decision became the final decision of the Commissioner.[7]

On July 21, 2022, Provitt filed this civil action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 10, 11.) This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir.

---

[7] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either ... the decision is not supported by substantial evidence, or ... the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

## III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled.[8] *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[8] Although DIB and SSI are separate programs, the standards for determining disability are identical.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by an ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant can perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Provitt met the insured status requirements of the Social Security Act through September 30, 2022, but had not engaged in substantial gainful activity since the alleged onset date. (R. 12.) The ALJ determined that Provitt suffers from the following severe impairments that significantly limit his ability to perform basic work activities: right distal ulnar neuropathy, right shoulder tendonitis, and cervical and lumbar degenerative disc disease. (R. 13.) The ALJ determined that Provitt suffers from the following non-severe impairments: hemorrhoids, Gastroesophageal Reflux Disease, benign prostate hypertrophy, Hepatitis B, depressive disorder, generalized anxiety disorder, and H. Pylori. (R. 13.)

The ALJ concluded that Provitt does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14.) The ALJ explained:

> The requirements of Medical Listings 1.15, 1.16, and 1.18 are not met [in this case] because the evidence of record does not contain medical documentation of at least one of the following: (1) a documented medical

need for a walker, bilateral canes, or bilateral crutches, a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of one hand; or (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

(R. 14-15.) The ALJ determined "[t]he requirements of Medical Listing 11.14 are not met because the evidence of record does not demonstrate that [Provitt] has disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." (R. 15.) The ALJ further determined that "the evidence of record does not demonstrate that [Provitt] has marked limitation in physical functioning." (R. 15.)

After consideration of the entire record, the ALJ determined Provitt retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b)[9] and 416.967(b), "except [Provitt] is limited to frequent bilateral handling and fingering and bilateral pushing and pulling hand and foot controls and occasional exposure to unprotected heights and hazardous moving mechanical parts. He should not perform commercial driving. [He] has the ability to stand and/or walk up to four hours total during an eight-hour workday." (R.

---

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

15.) In assigning this RFC, the ALJ found Provitt's impairments could reasonably be expected to cause some of the alleged symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (R. 25.)

In support of her finding, the ALJ thoroughly summarized the medical records. (R. 17-25.) The ALJ also discussed the function report completed by Provitt's mother and summarized Provitt's hearing testimony. (R. 16.)

Based upon the testimony of a vocational expert ("VE"), the ALJ determined that Provitt is unable to perform any past relevant work. (R. 28-29.) The VE also testified that an individual with Provitt's age, education, work experience, and RFC could work as a table worker, machine tender and office helper. (R. 30.) In light of the testimony of the VE, the ALJ found that based upon Provitt's age, education, work experience and RFC, he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and thus he was not disabled as defined by the Act. (R. 30.) The ALJ concluded that Provitt had not been under a disability from the alleged disability onset date through the date of the ALJ's decision. (R. 30.)

## V.    DISCUSSION

On appeal, Provitt argues that the ALJ did not adequately consider the medical opinion of consultative examiner Dr. Larry W. Epperson in the determination of the RFC. Provitt complains that Dr. Epperson opined he was limited to occasional lifting and carrying of 10 pounds as well as occasional lifting and carrying of 20 pounds so the RFC

of light work is inconsistent with these lifting limitations. Provitt also complains that the ALJ failed to mention these lifting limitations in her hearing decision.

The Commissioner argues the ALJ properly evaluated Dr. Epperson's opinion. The Court agrees.

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The regulations also provide:

> A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant] [has] one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) [His] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) [His] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) [His] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) [His] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). The regulations direct the ALJ to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

> When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors [the ALJ] considers when … evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)….

20 C.F.R. § 404.1520c(a).

The regulations direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization of the medical source, and (5) other factors. 20 C.F.R. § 404.1520c(1)(c). The ALJ must explain in her decision how she considered the factors of supportability and consistency in her determination of overall persuasiveness of each source. 20 C.F.R. § 404.1520c(b)(2) ("[S]upportability ... and consistency ... are [t]he most important factors we consider when we determine how persuasive we find a medical source's opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."). The ALJ is not required to explain how she considered the remaining factors unless she finds two or more medical opinions are equally well-supported and consistent

with the record but are not exactly the same. *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021). "When weighing medical opinion evidence, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record." *Wines v. Acting Comm'r of Soc. Sec.*, No. 21-13606, 2022 WL 2526586, at *3 (11th Cir. July 7, 2022).

Dr. Epperson performed a consultative examination of Provitt in September 2021, which included an electromyogram and nerve conduction study, and completed a medical statement of Provitt's ability to do work-related activities. (R. 1189-1207.) According to Dr. Epperson, the electromyogram and nerve conduction study revealed normal upper and lower extremity findings with mild right ulnar neuropathy of the right wrist. (R. 1189-1190.) In the medical statement, Dr. Epperson opined that Provitt's external limitations were that he could occasionally lift and/or carry up to twenty pounds, stand and/or walk about 8 hours in an 8-hour workday, and perform occasional pushing or pulling of hand and/or foot controls. (R. 1194-96.) Dr. Epperson also opined that Provitt's postural limitations were never to climb stairs, ramps, ladders, ropes, and scaffolds, but Provitt can occasionally balance, stoop, kneel, crouch and crawl. (R. 1197.) Dr. Epperson further opined that Provitt's environmental limitations were never to tolerate exposure to unprotected heights, move mechanical parts, and operate a motor vehicle; however, Provitt can tolerate occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, vibration, and moderate noise. (R. 1198.)

In the hearing decision, the ALJ summarized the records from Dr. Epperson, as follows:

On September 7, 2021, Dr. Larry Epperson, M.D., performed an electromyogram and nerve conductions study, as part of a consultative examination. (Exhibit B21F) The claimant reported *intermittent* numbness and tingling in his arms and legs. He also reported neck and back pain. The electromyogram was normal. The nerve conduction study revealed a prolonged terminal and F-wave latency of the right ulnar nerve, and a slow sensory nerve conduction velocities of the finger to wrist segment of the right ulnar nerve. The interpretation was that there is evidence of a right distal ulnar nerve neuropathy at the right wrist. There is no electrophysiological evidence of a diffuse sensorimotor peripheral neuropathy in the left or right upper or lower extremities, bilateral carpal tunnel syndrome, a left ulnar neuropathy, C5-C8 radiculopathy or L3-S1 radiculopathy of the bilateral tardy ulnar palsy.

Furthermore, Dr. Epperson, completed a Medical Source Statement of the claimant's ability to do work-related physical activities. (Exhibit B22F/1-6) Therein, he opined that the claimant could occasionally lift and/or carry twenty pounds. He can sit, stand, and walk at one time for eight hours, and can sit, stand, and walk for a total of eight hours. It was noted that the claimant believes that he has required a cane to ambulate for the past year. He can occasionally reach, handle, finger, feel and push/pull. He can occasionally use his feet to operate foot controls. It was noted the nerve conduction study and electromyogram, were normal in the upper and lower extremities with mild dorsal ulnar neuropathy at the wrist. The claimant can never climb stairs, ramps, ladders, ropers, and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can never tolerate exposure to unprotected heights, and moving mechanical parts. He can never operate a motor vehicle. He can tolerate occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration. He can tolerate moderate noise. He has an 8% disability for the whole body. The claimant can perform activities like shopping. He can travel without a companion for assistance. He can ambulate without the assistance of a wheelchair, walker, or two canes or two crutches. He can walk a block at a reasonable pace on rough or uneven surfaces. He can use standard public transportation. He can climb a few steps at a reasonable pace with the use of a single handrail. He can prepare a simple meal and feed himself. He can care for his personal hygiene. He can sort, handle, and use paper/files.

(R. 23-24.)

In addition, the ALJ observed that Dr. Epperson described Provitt's ulnar neuropathy as mild. (R. 25.) The ALJ also observed that this description by Dr. Epperson was made in September 2021 when Provitt described the tingling and numbness in his arms and legs as intermittent, and after a consultative examination in 2019 revealed that Provitt had normal grip strength and normal dexterity. (R. 25.)

The ALJ found that Dr. Epperson's findings were only partially persuasive, though the results from the objective tests conducted were persuasive. The ALJ addressed these findings in detail, stating:

> The findings of Dr. Larry Epperson, M.D., on consultative examination are partially persuasive. (Exhibits B20F & B21F) Dr. Epperson performed electromyogram and nerve conduction studies, which, according to Dr. Epperson, revealed normal upper and lower extremity findings with mild right ulnar neuropathy of the right wrist. The undersigned finds the test results persuasive. However, Dr. Epperson's hand and foot limitation that are contained in the medical source statement are not consistent with the claimant's report of intermittent numbness and tingling in the extremities, nor are they consistent with the mostly normal test results which exception to the mild right ulnar neuropathy as described by Dr. Epperson. Additionally, Dr. Epperson checked the box indicating that the claimant required the use of a cane to ambulate, and noted "he believes that he does for the past year". Thus, this assessment was based on the claimant's report of limitation, even though Dr. Epperson's examination findings, and the longitudinal treatment records, do not support a finding that the claimant requires a cane to ambulate. The treatment records from the claimant's pain management specialist consistently noted that the claimant's gait was normal, and he was able to stand without difficulty. (Exhibit B17F) Even Dr. Epperson opined that the claimant could stand and walk for 8 hours each during an 8-hour workday. Thus, the medical source statement is not fully supported by the medical evidence of record and is only partially persuasive.

(R. 27.)

Here, the Court finds no reversible error in the ALJ's consideration of Dr. Epperson's opinion. The ALJ's explanations, which incorporated the record as a whole,

are sufficient for the Court to determine that her weighing of Dr. Epperson's opinion is supported by substantial evidence. In the ALJ's decision, she determined that Dr. Epperson's findings, namely the medical statement,[10] was unsupported and inconsistent as required under 20 C.F.R. § 416.920c(b)(2). (R. 27.) The ALJ expressly stated, "Dr. Epperson's hand and foot limitation that are contained in the medical source statement are not consistent with [Provitt's] report of intermittent numbness and tingling in the extremities, nor are they consistent with the mostly normal test results with exception to the mild right ulnar neuropathy…." (*Id.*) Additionally, the ALJ emphasized Dr. Epperson's basis for indicating Provitt required the use of a cane. She reasoned that Dr. Epperson relied on Provitt's subjective assertion that he needed a cane notwithstanding Dr. Epperson's independent findings that Provitt can stand and/or sit for about 8 hours a day. The ALJ further reasoned that the records of Provitt's pain management specialist consistently noted that his gait was normal, and he was able to stand without difficulty. These normal findings support the ALJ's determination. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at \*4 (11th Cir. 2022) (noting that normal findings support the ALJ's determination that the claimant was not disabled).

In addition, the ALJ's silence on Dr. Epperson's opinion of Provitt's ability to occasional lift or carry up to twenty pounds does not constitute reversible error. The ALJ

---

[10] It appears the ALJ's reference to the medical statement completed by Dr. Epperson as the "Medical Source Statement" is a clerical error. The form Dr. Epperson completed is entitled "Medical Statement of Ability to Do Work-Related Activities (Physical)." (R. 1194-99.) A blank form entitled "Medical Source Statement of Ability to do Work-Related Activities (Physical)" is also in the medical record, but that form was not completed by Dr. Epperson. (R. 1200-05.)

is not required to explain how she considered each individual finding or opinion of a medical source. *Gogel*, 2021 WL 426128, at *9 ("Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review."). Because the ALJ provided sufficient reasons connecting her persuasiveness determination of Dr. Epperson's findings with the RFC, this Court can conduct meaningful judicial review. *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005). Therefore, the ALJ applied the proper legal standard when considering the persuasiveness of Dr. Epperson's findings.

Moreover, the record evidence from other medical sources supports the ALJ's evaluation of Dr. Epperson's opinions. Treatment notes from other medical sources repeatedly show that, despite Provitt's claims of neck, back, and right shoulder pain, he had normal range of motion, normal strength in the upper and lower extremities, no tenderness or triggering points, and a normal gait. (R. 670, 698-703, 1044, 1117-24, 1189-93.) An examination in December 2018 shows Provitt had normal range of motion, normal strength, and he was ambulating without difficulty. (R. 776-94.) A later examination in November 2019 shows that Provitt had normal range of motion and no tenderness in his back. (R. 717-40.) Other medical sources reported that Provitt had no tenderness or trigger points of the cervical spine, and no tenderness, normal range of motion, normal muscle strength, and normal tone. (R. 1117-20). It is worth mentioning that the Center for Pain noted repeatedly that Provitt's pain was out of proportion to the examination. (R. 1117-20, 1121-24, 1128-31, 1132-35.) Consequently, the medical evidence does not support such

extensive restrictions as opined by Dr. Epperson, but rather provides substantial evidence in support of the ALJ's finding.

In short, Provitt has failed to meet his burden of demonstrating that the ALJ's decision is not supported by substantial evidence. The record reflects that the ALJ thoroughly considered all the evidence and found Dr. Epperson's opinions to be partially persuasive. The ALJ weighed the evidence and sufficiently explained her conclusions concerning Dr. Epperson's opinions. Contrary to Provitt's urging, the Court may not reevaluate the basis of those conclusions. *See Dyer*, 395 F.3d at 1210; *also Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 138–39 (11th Cir. 2019) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.") (internal citations omitted). Accordingly, the Court finds Provitt's claim fails.

## VI.   CONCLUSION

After review of the administrative record, and considering all the arguments, the Court finds that Commissioner's decision to deny Provitt disability is supported by substantial evidence and is in accordance with applicable law. Therefore, it is ORDERED as follows:

1.   The claimant's motion for summary judgment (Doc. No. 10) is DENIED.

2.   The Commissioner's motion for summary judgment (Doc. No. 11) is GRANTED.

3.   The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 19th day of January, 2024.


JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE